NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2022 VT 46

No. 2021-164

| | |
|---|---|
| Joseph Worrall | Supreme Court |
| | |
| | On Appeal from |
| v. | Employment Security Board |
| | |
| Department of Labor | January Term, 2022 |
| (Snowfire Ltd., Employer) | |

Jared Adler, Chair

Matthew M. Shagam of Rich Cassidy Law, South Burlington, for Plaintiff-Appellant.

Dirk Anderson, Montpelier, for Defendant-Appellee.

Lorrie Johnson, Authorized Agent, Waterbury, for Respondent-Appellee Snowfire.

PRESENT: Reiber, C.J., Eaton, Carroll and Cohen, JJ., and Durkin, Supr. J., Specially Assigned

¶ 1.    **COHEN, J.**  Claimant challenges a decision by the Employment Security Board finding him ineligible for unemployment compensation and liable to the Vermont Department of Labor for an overpayment.  We affirm.

¶ 2.    Claimant sought unemployment compensation in March 2020 and received benefits.  In November 2020, a claims adjudicator found that claimant was disqualified from receiving benefits as of the week ending May 2, 2020, because he left his employment voluntarily

without good cause attributable to his employer. The claims adjudicator determined that claimant was obligated to repay $15,028 in overpaid benefits.[*]

¶ 3.     Claimant appealed this decision to an administrative law judge (ALJ). After a hearing, the ALJ made the following findings. Claimant worked full-time for employer Snowfire, Ltd. as a service adviser and technician. He was temporarily laid off on March 27, 2020, due to the COVID19 pandemic. Employer rehired claimant effective April 17, 2020. It paid wages to claimant from April 17, 2020 to April 23, 2020 from its Paycheck Protection Program (PPP) loan but it did not require claimant to work for these wages. Claimant returned to work on April 24, 2020, and his last day of work was April 27, 2020. He worked just over six hours on April 24 and just over two hours on April 27. For the pay period ending April 30, 2020, employer also paid claimant approximately thirty-two hours of gross vacation pay.

¶ 4.     The ALJ found that, for much of his employment, claimant expressed a desire to leave Vermont in search of better job opportunities in the science field. On April 27, 2020, claimant told his general manager that he planned to move to Massachusetts the following month to look for a job in the science field. The move held additional appeal because claimant's mother lived in Massachusetts. Claimant's mother was a cancer survivor in her seventies.

¶ 5.     Claimant traveled between Vermont and his mother's home in April and May 2020. During these visits, claimant delivered some of his personal effects to Massachusetts. The ALJ found it unclear when claimant actually relocated to Massachusetts. On May 7, 2020, claimant's mother had a stroke. Claimant was in Vermont at the time and traveled to Massachusetts within a day or two thereafter. He returned to Vermont sometime before May 29, 2020.

---

[*]     The claims adjudicator also assessed a penalty based on a finding that claimant intentionally failed to disclose or misrepresented a fact in connection with his case. The penalty was later vacated and it is not at issue in this appeal.

2

¶ 6. Claimant filed a weekly claim certification for the week ending April 25, 2020. He reported working six hours and earning wages. On a claim certification for the following week, claimant indicated that he did not quit a job or receive any vacation pay. He reported working forty hours and earning wages. Claimant was paid his weekly benefit amount for each of the weeks ending May 16, 2020 through October 24, 2020. He also received Federal Pandemic Unemployment Compensation benefits for the weeks ending May 16, 2020 through July 25, 2020.

¶ 7. The ALJ found that claimant left his employment voluntarily without good cause attributable to his employer and he was therefore disqualified from receiving benefits under 21 V.S.A. § 1344(a)(2)(A). The ALJ rejected claimant's argument that he did not perform any work for employer after his March 2020 layoff. She credited the testimony of employer's witness who testified that claimant performed work on April 24, 2020 and April 27, 2020. Employer also submitted a time sheet and pay records corroborating this testimony. The ALJ found no dispute that employer paid and claimant accepted wages for working on these two dates. Given this, the ALJ did not credit claimant's testimony that he had not returned to work. She thus concluded that claimant did not refuse an offer to work or refuse to work but instead voluntarily left his employment.

¶ 8. Having voluntarily left his employment, the ALJ explained that claimant had the burden of proving by a preponderance of the evidence that he had a sufficient reason to justify leaving and that the reason was attributable to his employer. The ALJ found that he failed to meet his burden and that his various representations during the hearing lacked credibility. The evidence showed that claimant left Vermont to pursue career opportunities outside Vermont, which he had expressed interest in doing well before the onset of the COVID-19 pandemic. Claimant's decision was personal to him and not attributable to any act or omission on employer's part. The ALJ also rejected claimant's assertion that he left his employment to care for or assist a family member who was self-isolating or quarantining at the recommendation of a health care provider or public health

3

authority because she was at high risk of COVID-19. See 21 V.S.A. § 1344(a)(2)(A)(iv)(IV) (2020) (amended 2021 and 2022) (providing that an individual who left employment voluntarily without good cause attributable to employer will not be disqualified for benefits under such circumstances). The ALJ thus found claimant liable to repay the overpayment he received.

¶ 9. Claimant appealed this decision to the Employment Security Board. The Board found the ALJ's findings supported by the evidence and upheld the ALJ's conclusions. It reiterated that claimant made an affirmative decision to leave Vermont and that, even if he did so in part based on his desire to assist a family member, it remained a voluntary quit without good cause attributable to his employer, which was disqualifying. This appeal followed.

¶ 10. Claimant argues on appeal that the Board erred in finding him disqualified for benefits. According to claimant, the Board accepted that he undertook efforts to relocate out of state before receiving a return-to-work notice. Based on this premise, claimant asserts that he was "unavailable for work" at the time his employer offered him the opportunity to return and that he was therefore entitled to benefits.

¶ 11. "Our review of decisions by the Employment Security Board is highly deferential." 863 To Go, Inc. v. Dep't of Lab., 2014 VT 61, ¶ 8, 196 Vt. 551, 99 A.3d 629. The Board's factual findings will stand "unless clearly erroneous," and we will uphold the Board's "conclusions if reasonably supported by the findings." Id. We presume that "[d]ecisions within the Board's expertise" are "correct unless there is a clear showing to the contrary." Id.

¶ 12. We reject the premise of claimant's argument on appeal. The Board did not find that claimant had relocated at the time employer offered him the opportunity to return to work. To the contrary, it found employer rehired claimant effective April 17, 2020, and that claimant returned to work on April 24, 2020. He then left voluntarily without good cause attributable to the employer.

4

¶ 13. By law, an individual is disqualified from receiving unemployment benefits if the individual "left the employ of the individual's last employing unit voluntarily without good cause attributable to the employing unit." 13 V.S.A. § 1344(a)(2)(A). The ALJ's conclusion to this effect, adopted by the Board, is supported by the findings, which are in turn supported by the evidence.

¶ 14. As set forth above, the ALJ credited employer's testimony that claimant performed work on April 24, 2020 and April 27, 2020. Employer submitted a timesheet and pay records for claimant corroborating this testimony. The ALJ found no dispute that employer paid—and claimant accepted—wages for working on these days. Given this evidence, the ALJ rejected claimant's testimony that he did not perform any work for employer after March 2020. She rejected the assertion that claimant refused an offer of work and found instead that he voluntarily left his employment.

¶ 15. Claimant essentially disagrees with the factfinder's assessment of the evidence and the credibility of witnesses. While he points to evidence he believes shows that he did in fact relocate to Massachusetts before he was offered the opportunity to return to work, the factfinder found otherwise and we do not reweigh the evidence on appeal. See Cook v. Dep't of Emp. & Training, 143 Vt. 497, 501, 468 A.2d 569, 571 (1983) ("Weight, credibility and persuasive effect are for the trier of fact . . . ."). This case is not about whether claimant refused unsuitable work, as claimant posits, and the cases cited by claimant regarding suitable work are inapposite.

¶ 16. To the extent that claimant is challenging the amount he must repay to the Department of Labor, he fails to show that he raised this argument below and he cites no legal authority in support of his position. We thus reject this claim of error as inadequately briefed. See V.R.A.P. 28(a) (explaining that brief must include, among other things, "issues presented, how they were preserved, and appellant's contentions and the reasons for them—with citations to the authorities, statutes, and parts of the record on which the appellant relies"); Johnson v. Johnson,

5

158 Vt. 160, 164 n.*, 605 A.2d 857, 859 n.* (1992) (stating that Court will not address contentions so inadequately briefed as to fail to minimally meet standards of V.R.A.P. 28(a)).

Affirmed.

FOR THE COURT:

_____

Associate Justice