## Joseph Mazut v. Department of Employment and Training (General Electric Company, Appellant)

[561 A.2d 1362]

No. 88-175

Present: **Allen, C.J., Peck, Dooley and Morse, JJ., and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed May 12, 1989

*Anthony B. Lamb* and *Eileen M. Blackwood* of *Paul, Frank & Collins, Inc.*, Burlington, for Plaintiff-Appellee.

*Robert B. Hemley, Van Z. Krikorian* and *Dennis R. Pearson* of *Gravel and Shea*, Burlington, for Defendant-Appellant.

**Morse, J.** Plaintiff, Joseph Mazut, was fired from his job as a tool crib attendant at General Electric (GE) in Burlington, Vermont, on September 10, 1987. A claims examiner for the Department of Employment and Training determined that Mr. Mazut was not entitled to unemployment benefits because the discharge was for misconduct connected with work. 21 V.S.A. § 1344(a)(1)(A). An appeal was taken to an appeals referee, who reversed the claims examiner. The referee's decision was appealed

---

to the Employment Security Board, which affirmed the referee. We affirm the Board's decision.

## I.

### *The Hearings Below*

Only two witnesses testified at the hearing before the appeals referee: Robert Fraser, Manager of Union and Hourly Relations at GE, and plaintiff. Since Mr. Fraser was not a witness to any of the conduct which led to plaintiff's discharge, he introduced company records, including unsigned statements of plaintiff's supervisors. These records indicated that plaintiff had been suspended from work for a short time on June 25, 1987. On July 16, 1987, plaintiff was given a warning for not starting a work project on time. The infractions that led to the instant discharge were insubordination and use of profanity on September 1, 1987. Under GE's written rules of conduct, these offenses are considered sufficiently serious in and of themselves to lead to discharge.

Plaintiff testified that he had been an employee of GE for nearly seven years and had been harassed by various union members for his anti-union sentiments and activities in recent years. He had been criticized by GE in January 1987 for stirring up trouble because of his anti-union stance. As a consequence of plaintiff's complaint to the National Labor Relations Board (NLRB) that such criticism was an unfair labor practice, GE settled and removed from plaintiff's personnel file the critical memorandum and posted a notice in the plant, stating:

> WE WILL NOT tell Joseph Mazut, Jr. that he may be suspended or discharged if he engages in any display of anti-union activity which is protected under the National Labor Relations Act, as amended.

Plaintiff related that on September 1, 1987, he was upset because he was facing a hearing that week in a divorce action brought by his wife, and she had been calling him repeatedly. In addition, his supervisors had been following him around the plant and pressuring him. As a result of the pressure, he "blew up" and swore at one of them. He was immediately suspended for the rest of his shift. He was fired on September 10, 1987.

The appeals referee held that Mr. Mazut was not discharged for misconduct connected with his work, for purposes of the Un-

employment Compensation Act, on the ground that GE failed to meet its burden of proof by submitting at the hearing only unsigned and unnotarized statements of witnesses.

GE did not attend the subsequent Board hearing. The Board affirmed the referee, agreeing that GE had failed to meet its burden of proving disqualifying misconduct. It found that plaintiff was discharged both for abusive and obscene language on September 1, 1987, and for "a long-standing pattern of work rule violations and insubordination." The Board then concluded that the documentary information presented by GE was "refuted by [plaintiff's] sworn testimony."

## II.

### Discussion

On appeal to this Court, GE raises two issues. First, it asserts that the uncontroverted evidence that plaintiff used profanity on September 1, 1987, establishes, without more, grounds for discharge for misconduct connected with his work, and, second, that the pattern of insubordinate behavior jusified such a discharge from employment.

"Misconduct" within the meaning of the Unemployment Compensation Act, 21 V.S.A. § 1344(a)(1)(A), denotes employee behavior showing "substantial disregard of the employer's interest." *Favreau* v. *Department of Employment & Training*, 151 Vt. 170, 172, 557 A.2d 909, 910 (1989); *Strong* v. *Department of Employment & Training*, 144 Vt. 128, 130, 473 A.2d 1170, 1172 (1984). The burden of proof is on the employer to establish misconduct. *Strong*, 144 Vt. at 130, 473 A.2d at 1171.

The Board found that plaintiff was fired not merely for his "blow-up" on September 1, but for a pattern of insubordinate behavior. The Board further determined that the pattern was not proved. These findings must not be disturbed if there is credible evidence to support them, even if there is substantial evidence to the contrary. See *Favreau*, 151 Vt. at 173, 557 A.2d at 911; *Branch* v. *Department of Employment Security*, 142 Vt. 609, 610, 458 A.2d 1121, 1122 (1983). The record here supports the Board's findings and conclusions.

Plaintiff concedes that he "blew up" and used profanity at work on September 1, but argues that he was under tremendous pressure from the impending divorce and "hounding" by his su-

pervisors. In his view, the September 1 incident was a pretext. His employer was looking for a chance to fire him because of perceived disruption of plant personnel on account of his anti-union views. The record amply supports an impression that plaintiff was vocal, vociferous and cantankerous on the union issue. While the Board did not find that the firing was retaliatory for protected activities, it did conclude that the employer's alternative explanation was not proved.

GE's reliance on *Cross* v. *Department of Employment & Training,* 147 Vt. 634, 523 A.2d 1247 (1987), is misplaced. There the employee used profanity "liberally" over a period of six months, causing offended employees to leave his work area. This situation culminated in a profane outburst aimed at his employer. After a warning, he swore again on the job and was fired. Here, unlike *Cross,* the Board concluded that GE had not demonstrated a pattern of misbehavior sufficiently disruptive of GE's interests to justify a denial of unemployment benefits, but rather only one instance of disruptive conduct. See *Strong,* 144 Vt. at 129, 473 A.2d at 1171 (failure to report to work "did not amount to an intentional and substantial disregard of the employer's business interests"); *Johnson* v. *Department of Employment Security,* 138 Vt. 554, 555, 420 A.2d 106, 107 (1980) (misconduct not established where evidence supported claim that difficulties at job arose from misunderstandings).

It is obvious that the appeals referee and the Board did not place as much weight on the hearsay statements of plaintiff's supervisors as on plaintiff's live testimony. This was proper. See *Longe* v. *Department of Employment Security,* 135 Vt. 460, 463, 380 A.2d 76, 79 (1977).

We conclude that the Board's determination was not clearly erroneous and was supported with findings that have evidentiary support in the record. *Branch,* 142 Vt. at 610, 458 A.2d at 1122; *Cooley* v. *Department of Employment Security,* 138 Vt. 211, 213, 414 A.2d 1154, 1155 (1980).

*Affirmed.*